# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: TEAM SYSTEMS INTERNATIONAL, LLC, | : | Chapter 7 |
| Debtor. | : | Bankr. No. 22-10066-CTG |
| | : | |
| RANDY M. MOTT, | : | Adv. Proc. No. 23-50004 (CTG) |
| Appellant, | : | |
| v. | : | Civ. No. 24-1035-GBW |
| GEORGE L. MILLER, solely in his capacity as the Chapter 7 Trustee of the estate of Team Systems International, LLC, GPDEV LLC, and SIMONS EXPLORATION INC., | : | |
| Appellees. | : | |

## MEMORANDUM

## I.    INTRODUCTION

This appeal arises in the chapter 7 case of Team Systems International, LLC (the "Debtor") with respect to a *Final Order re: Motions for Sanctions Under § 1927* (Adv. D.I. 325)[1] (the "Final Sanctions Order") issued by the Bankruptcy Court on September 10, 2024 in an adversary proceeding brought by the Chapter 7 Trustee ("Trustee") against the Debtor's members, former managers, and certain affiliates (the "Defendants"). The Final Sanctions Order imposed monetary sanctions against Randy M. Mott, as counsel to the Defendants, for fees incurred by appellees, the Chapter 7 Trustee (the "Trustee") and GPDEV, LLC and Simons Exploration (the "Judgment

---

[1] The docket of the adversary proceeding, captioned *Miller v. Mott, et al.,* Adv. No. 23-50004 (CTG) (the "Adversary Proceeding"), is cited herein as "Adv. D.I. __," and the docket of the chapter 7 case, captioned *In re Team Sys. Int'l, LLC,* No. 22-10066 (CTG), is cited herein as "Bankr. D. Del. __." Many of the pleadings and orders relevant to this appeal were docketed in both the main bankruptcy case as well as the Adversary Proceeding. This Memorandum refers to the docket of the Adversary Proceeding wherever possible. The appendix (D.I. 21) filed in support of the Trustee's answering brief (D.I. 20) is cited herein as "A__."

Creditors," and together with the Trustee, the "Appellees") in connection with a motion filed by Appellant which sought to vacate a previously entered preliminary injunction freezing certain of Defendants' assets based on allegations that Defendants had engaged in serious misconduct in the bankruptcy case itself (Adv. D.I. 145) (the "60(b)(3) Motion"). The Bankruptcy Court's July 9, 2024 Memorandum Opinion (Adv. D.I. 256) (A0112-142) (as later modified by Adv. D.I. 268) (the "Sanctions Opinion") sets forth the basis for its imposition of sanctions under 28 U.S.C. § 1927, including its finding that the Rule 60(b)(3) Motion was filed in bad faith. Appellant has timely appealed the Final Sanctions Order, challenging the finding of bad faith and raising several other issues on appeal. As set forth herein, the Final Sanctions Order will be affirmed.

## II.    BACKGROUND

### A.    The Prepetition Litigation and the Chapter 7 Conversion

In 2022, the Judgment Creditors obtained a substantial judgment ($6 million) against the Debtor in the U.S. District Court for the Northern District of Florida. After failing to obtain a stay of the enforcement of that judgment, the Debtor filed a chapter 11 bankruptcy case on January 18, 2022. The Judgment Creditors moved to dismiss the chapter 11 case, alleging that the chapter 11 petition was filed in bad faith. The Bankruptcy Court agreed that "cause" existed to convert/dismiss the case. The parties then agreed that conversion of the case to a chapter 7 would better serve the interests of creditors and the estate. On March 31, 2022, the Bankruptcy Court entered orders converting the case to chapter 7 and appointing the Trustee. (Bankr. D.I. 151, 152.)

### B.    The Adversary Proceeding and the Preliminary Injunction

In January 2023, the Trustee filed a complaint (Adv. D.I. 1) (the "Complaint") commencing the Adversary Proceeding which seeks, among other things, to avoid and recover "millions of dollars of the debtor's assets transferred" to the Defendants prior to the bankruptcy filing. The Trustee also sought a preliminary injunction to prevent the Defendants from

dissipating assets during the pendency of the Adversary Proceeding. (A0116.)

On January 23, 2023, the Bankruptcy Court conducted an evidentiary hearing (the "January 2023 Hearing") on the Trustee's motion for a preliminary injunction. (*See* A0180-230 (the "1/23/23 Tr.").) The Defendants were represented by counsel at that hearing. (*Id.* at 2.) The Trustee presented the testimony of William A. Homony of Miller Coffey Tate LLP, his financial advisor. Defendants' counsel cross-examined Mr. Homony. (*See id.* at 3). During the hearing, the Trustee offered more than 30 exhibits into evidence. (*See id.* at 3-4). Nearly all of the Trustee's exhibits were introduced without objection from counsel for the Insider Defendants. (*See id.* at 3-4; 32:24-33:21; 40:5-21; 42:19-25; 54:18; 75:25-76:8; 86:8-10; 87:7-21). The Defendants had the opportunity to introduce their own evidence at the January 2023 Hearing. Defendants introduced one exhibit, but they presented no witness testimony of their own. (*See id.* at 3-4.)

At the January 2023 Hearing, the Trustee introduced evidence to establish that the Debtor's former managers, Deborah Mott ("D. Mott") and Steven M. Acosta ("Acosta"), had produced purported copies of certain bank statements and other Debtor records to the Trustee. (*See id.* at 21:7-20.) The Trustee further introduced evidence and testimony to establish that some of the bank statement copies that D. Mott and Acosta produced to the Trustee had been whited-out such that the recipient of certain transfers could not be discerned from the documents. (*See id.* at 30:6-10, 35:17-22.) The Trustee later obtained copies of these same bank statements from the bank, which contained no white-out redactions. (*See id.* at 26:4-6; 27:5-14; 29:1-32:22; 33:23-37:9.) The clean copies of the bank statements revealed that (i) within two years of the January 18, 2022 bankruptcy petition date (the "Petition Date"), the Debtor transferred $3,000,000 to Addy Road LLC ("Addy Road"), an entity controlled by D. Mott, and (ii) within one year of the Petition Date, the Debtor made two transfers totaling $250,000 to D. Mott. (*See id.* at 32:10-22; 36:10-37:9.)

2

The Trustee further introduced evidence to establish that none of the above-described transfers was disclosed on the Debtor's statement of financial affairs ("SOFA") as required, which D. Mott signed under penalty of perjury. (*See id.* at 21:7-33:20 (testimony as to nondisclosure of the $3,000,000 transfer to Addy Road); *id.* at 33:25-40-12 (testimony as to nondisclosure of the $250,000 in transfers to D. Mott); *see also* Sanctions Op. at 2 (A0113) ("Specifically, the Court found [at the January 2023 Hearing] that the debtor failed to disclose on its Statement of Financial Affairs certain prepetition payments it made to the defendants.").) The Trustee further introduced evidence and testimony to establish that: (i) the $3,000,000 transfer to Addy Road was not disclosed in the Debtor records that D. Mott and S. Acosta produced to the Trustee (*see id.* at 21:7-33:20); (ii) the $250,000 in transfers to D. Mott were disclosed as being payments to a "subcontractor" (*see id.* at 68:2-15); and (iii) at the time such transfers were made, D. Mott was the largest equity holder in the Debtor, a Manager of the Debtor, and a member of the Debtor.

The Bankruptcy Court determined to grant in part the Trustee's request for a preliminary injunction based upon the evidence presented at the January 2023 Hearing. (*See* A0025-A0032.) On January 27, 2023, the Bankruptcy Court entered the preliminary injunction (Adv. D.I. 25) (A0036-39) (the "Preliminary Injunction"). On January 31, 2023, the Court entered its Memorandum Opinion regarding entry of the Preliminary Injunction, which determined, among other things, that the Trustee "presented evidence detailing that the badges of fraud were 'amply present' in the case, indicating a strong likelihood of success on the fraudulent transfer claims." *In re Team Sys. Int'l, LLC*, 2023 WL 1428572, *10 (Bankr. D. Del. Jan. 31, 2023). The Bankruptcy Court further found that the Trustee had "demonstrated that the 'factual circumstances [of the case] provide cause for concern that without an injunction [prohibiting] such transfers, defendants may move or conceal assets.'" *Id.* *12.

3

### C.    The 60(b)(3) Motion, Objections, and Cross-Motions

In January, 2024, Appellant Mr. Mott appeared as counsel for the Defendants.  A year and four days after the Preliminary Injunction Order was entered, on January 31, 2024, Appellant and his then co-counsel filed an initial version of the 60(b)(3) Motion and brief in support (Adv. D.I. 140, 141) (the "Original 60(b)(3) Motion") on behalf of the Defendants, seeking to vacate the Preliminary Injunction on the basis that it was entered in error based on misrepresentations to the court made by opposing parties.  (*See* Adv. D.I. 141 at 9.)  The Original Motion asserts or infers that counsel to the Judgment Creditors made the white-out alterations to the Debtor's bank statements—alterations they had attributed to the Defendants—and therefore of "forging the key documents."[2]  (*Id.* at 22.)

On February 6, 2024, the Defendants filed the amended Rule 60(b)(3) Motion and brief in support (Adv. D.I. 145, 146) (A0040-68) seeking to vacate the Preliminary Injunction, which is the operative motion for purposes of this appeal.  The 60(b)(3) Motion, prepared and signed by Appellant, is revised to accuse counsel to the Judgment Creditors of "altering key documents" and having "submitted fraudulent evidence to the Court." (Adv. D.I. 146 at 23-24.)  Both Footnote 15 of the Original Motion and Footnote 20 of the operative 60(b)(3) Motion state that "the redactions came from the creditors." (Adv. D.I. 141 at 15; Adv. D.I. 146 at 15.)  Footnotes 12, 22, and 27 of the 60(b)(3) Motion further assert or infer that counsel to the Judgment Creditors received the bank statements without any white-out redactions. (*See* Adv. D.I. 146 at 9, 14, 27.)

---

[2] There appears no dispute that the allegations of forgery and fraud against Judgment Creditors' counsel were first made by Appellant in an ethics complaint that he prepared and filed with the Delaware Supreme Court Office of Disciplinary Counsel, bearing ODC File No. 116602-A, which is filed under seal. (Adv. D.I. 166.)  There appears no dispute that the ethics complaint alleges that Judgment Creditors' counsel "destroyed" the Debtor; "forged evidence"; "obviously added the white out"; "made either white redactions or knew who did"; and "[k]nowingly submitting false information to a tribunal" (D.I. 17 at 6-7 (quoting Ex. 22); D.I. 24 (waiving reply).)

4

Appellant also filed declarations in support.  (Adv. D.I. 147 (the "D. Mott. Decl."); Adv. D.I. 148 (the "Acosta Decl.").)[3]  The Acosta Declaration asserted that the Defendants, on behalf of the Debtor, provided bank statements to its original bankruptcy counsel Robinson & Cole ("R+C") that did not contain the white-out redactions.  (Acosta Decl. at ¶ 3.)  Based on that claim, the Defendants asserted that the Judgment Creditors "misrepresented who did the key redactions." (Adv. D.I. 146 at 24.)  As the Bankruptcy Court observed, "while that statement, standing alone, stops short of pointing the finger at the judgment creditors, the rest of the brief can fairly be read to accuse the judgment creditors of this misconduct."  (Sanctions Op. at 7.)  Indeed, as Defendants clarify in their brief in support of the 60(b)(3) Motion, "[t]he only inference possible on this evidence is that the redactions came from the creditors."  (Adv. D.I. 146 at 13 n.20.)

On February 16, 2024, the Trustee filed an objection to the 60(b)(3) Motion together with a cross-motion for sanctions pursuant to 28 U.S.C. § 1927[4] (Adv. D.I. 153) (A0069-107) (the "Trustee's Objection and Cross-Motion").  The Trustee's Objection set forth in detail numerous instances where the 60(b)(3) Motion misrepresented the record of the January 2023 Hearing. Relevant here, the 60(b)(3) Motion contained allegations that attorneys in the proceeding representing Judgment Creditors made the whiteout redactions that had concealed transfers to Defendants D. Mott and Addy Road.  (See, e.g., 60(b)(3) Motion at 2 (A0045) ("The evidence indicates that white redactions were not done by TSI (as represented by opposing parties) but were done after the documents were produced to creditors"); id. at 10 (A0053) ("Yet all of the

---

[3] Appellees assert that the Acosta Declaration is "facially dubious" and contains "numerous demonstrably false statements of fact that are directly contradicted by the docket and evidentiary record."  (D.I. 17 at 3; see id. at 8-10 (setting forth examples); see also Sanctions Op. at 11 n.29.

[4] "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927.

5

redactions only appear after the documents were produced to the creditors."); *id.* at 13 n. 20 (A0056) ("The only inference possible on this evidence is that the redactions came from the creditors, as they have control of the clean documents and passed them to the Trustee with alterations"); *id.* at 14 (A0057) ("The document obviously went through some alteration before it was given to the Trustee by the creditors."); *id.* at 15 (A0058) ("All of the facts point to redactions being made after the bank documents were transferred to the creditors before being used in the proceedings. . . . All the evidence and testimony shows that the redactions appeared after the Judgment Creditors received the original clean copies"); *id.* at 24 (A0067) ("creditors . . . misrepresented who did the key redactions and submitted fraudulent evidence to the Court themselves"). The Objection attached a declaration by Bradford Babbitt, general counsel of R+C, which asserted, contrary to the Acosta Declaration, that the bank statements that the Debtor first provided to its lawyers at R+C already contained the white-out redactions. (Adv. D.I. 153-8.)[5]

On February 28, 2024, Appellant filed a letter with the Bankruptcy Court which stated, "I will stand by my statement and evidence submitted to the Delaware Bar," and "I will also stand on what was submitted" to the Bankruptcy Court. (Adv. D.I. 169.) In response to the Trustee's Objections and Cross-Motion, Appellant filed a Notice of Partial Withdrawal with respect to the 60(b)(3) Motion. (A0108-11.) The Notice of Partial Withdrawal states that "[w]hile Defendants continue to stand by the veracity and accuracy of all statements made in the Motion, and all information submitted with the Motion, they also believe that the [R+C] declaration and exhibits thereto create a dispute such that Defendants will not meet their burden to vacate the Court's finding that the Members were responsible for the white-outs identified in the Decision." (*See id.*)

---

[5] As the Bankruptcy Court explains, due to the unusual procedural status of the matter before it, the Babbitt Declaration was not admitted into evidence or relied upon to establish the truth of the matter asserted. (*See* Sanctions Op. at 8 n.19.)

The Notice of Partial Withdrawal was made, however, "without prejudice." (*See id.*)

On March 5, 2024, the Judgment Creditors filed their own objection to the Rule 60(b)(3) Motion along with a cross-motion for sanctions pursuant to 28 U.S.C. § 1927 (Bankr. D.I. 453) ("Creditors' Objection and Cross-Motion"). The Creditors' Objection and Cross-Motion was accompanied by a declaration (Bankr. D.I. 453-2) (the "Creditors' Decl.") which verified as true and correct (1) copies of the documents produced by Debtor's then counsel R+C between Feb. 2 and Feb. 10, 2022 (*id.* at Exs. A-D), and (2) those exhibits submitted to the Bankruptcy Court in advance of the evidentiary hearing on the Preliminary Injunction (*id.* at Ex. E), and attesting that each of the documents produced by R+C are identical to those submitted by the Judgment Creditors at the hearing (Creditors' Decl. at ¶ 23), with the exception of certain black-out redactions made in compliance with applicable rules to protect personal data identifiers (including bank account numbers – with the last 4 digits left visible) which are not relevant to this appeal (*id.* at Exs. F-H).[6]

On March 12, 2024, Appellant filed a further reply on behalf of Defendants in further support of the Rule 60(b)(3) Motion, asserting that "the Motion does not accuse Creditors – or anyone else – of performing the white-out redactions." (Adv. D.I. 183 at 10.)

### D.    The Interim Sanctions Order

On April 29, 2024, the Bankruptcy Court held a hearing at which it summarily denied the Rule 60(b)(3) Motion as untimely, and then conducted a seven-hour evidentiary hearing on the Trustee's and Judgment Creditors' Cross-Motions for sanctions (the "April 2024 Hearing"). (*See*

---

[6] Counsel to the Judgment Creditors also sent Appellant a safe harbor notice warning of sanctions, and it appears undisputed that Appellant responded in a February 14, 2024 email stating "I stand by everything submitted to the Court"; and "I also firmly stand by everything that I personally submitted to the Delaware Bar." (*See* D.I. 17 at 7.)

Bankr. D.I. 507 (the "4/29/24 Tr.").) At the April 2024 Hearing, Appellant's co-counsel testified that Appellant was the "lawyer who had principal responsibility" for the 60(b)(3) Motion and was "the principal intellectual architect and draftsperson" of the 60(b)(3) Motion. (Sanctions Op. at 12 (A0123).) Appellant was questioned about the extent of his investigations before making the filings at issue, and admitted that he looked at documents, that his clients denied making the whiteout redactions, and that "Robinson & Cole screwed up the document production and these are not the original documents and I can prove it." (4/29/24 Tr. at 256-57.) Appellant indicated that he still wanted "to look at … every piece of metadata" and that Defendants "had subpoenaed that data" but that he still needed to "do a chain of custody and track the dates on the metadata and find out where the whiteouts came from." (*Id.* at 257.) Appellant further testified that he viewed his role in the case to throw "concrete blocks" in the road. (*See id.* at 253:18-22.)

Following the April 2024 Hearing, Appellant filed a post-hearing brief in which he attempted to introduce evidence, including a purported expert report, that was not disclosed prior to or introduced at the hearing. (*See* Sanction Op. at 22-24 (A0133-35).)

On July 9, 2024, the Bankruptcy Court issued the 31-page Sanctions Opinion (as later amended by Bankr. D.I. 530) granting the motions for sanctions against Appellant pursuant to pursuant to 28 U.S.C. § 1927 for multiplying the proceedings unreasonably and vexatiously. Among other things, the Sanctions Opinion states the following:

- "[T]he [Bankruptcy] Court found [at the January 2023 Hearing] that the debtor failed to disclose on its Statement of Financial Affairs certain prepetition payments it made to the defendants. And the [Bankruptcy] Court found that the defendants used white-out to alter the debtor's bank statements, which the debtor produced to the trustee, to conceal the fact that the defendants were the recipients of the transfers. The trustee obtained clean copies of the statements directly from the banks, revealing the defendants' alterations to the documents." (Sanctions Op. 2 (A0113));

- The Bankruptcy Court observed that: "[A]n allegation that either a party or an attorney fabricated evidence is an exceptionally serious one. . . . [T]he making of such a serious allegation against another lawyer, without strong evidence supporting the truth of that

8

allegation, is precisely the sort of conduct that might require the imposition of sanctions in order to protect the integrity of the judicial process." (Sanctions Op. 9 (A0120));

- The Bankruptcy Court found that the witness testimony and documents that Appellant relied upon in asserting that the creditors' counsel had made the white-out redactions was not credible. (Sanctions Op. 10-11 & n. 29 (A0121-22));

- The Bankruptcy Court declined to admit or consider any of the documents that Appellant attempted to introduce for the first time in a post-hearing brief. (Sanctions Op. at 22-24 (A0133-35)); and

- The Bankruptcy Court concluded that, while Appellant and his co-counsel attempted to argue that there was merely an "inference" that counsel to the Judgment Creditors had made the white-out redactions, "any ambiguity about whether Mott acted with vexatious intent" was resolved by the fact that Appellant had also filed an ethics complaint against the Judgment Creditors' counsel in which Appellant alleged that counsel "[either] made [the] white redactions or knew who did and did not disclose this to the court." (Sanctions Op. 19, 21 (quoting ethics complaint) (A0130, A0132).)

On July 22, 2024, the Bankruptcy Court entered an order, among other things, granting sanctions against Appellant and establishing a schedule for the parties to submit fee statements and for Appellant to file an objection to same (Adv. D.I. 268) (the "Interim Order").

### E.    The Final Sanctions Order

On August 1, 2024, the Trustee and Creditors both filed and served fee statements in accordance with the Interim Order: the Trustee's fee statement sought $156,500.45 in professional fees and expenses, and the Judgment Creditors' fee statement sought 86,185.07 in professional fees and expenses. (*See* Bankr. D.I. 535 and Adv. D.I. 277.)

On August 9, 2024, the Bankruptcy Court entered an order modifying the Interim Order in certain respects. In particular, this order directed Appellant to file "a detailed objection to the reasonableness of the fees sought by 4:00 p.m. on August 16, 2024." (*See* Final Sanctions Order at 2-3 (A0177-78).)

On August 14, 2024, Appellant filed his objection to the Trustee's fee statement. (*See* A0173-75.) The principal focus of Appellant's objection was his assertion that the "issue of the

9

white-outs . . . was withdrawn on February 6, 202[4], so the only fees that could be considered would be those from January 31 up to its withdrawal date." (A0173-74.)  Appellant did not challenge any particular time entry, any billing rate, or any expense in his objection.  (*See generally id.* A0173-75.)

On September 10, 2024, the Bankruptcy Court entered the Final Sanctions Order directing Appellant to pay monetary sanctions in the form of the actual fees and expenses incurred by the Trustee and the Judgment Creditors associated with bringing their respective sanctions motions. The Final Order rejects Appellant's assertion regarding the withdrawal of the white-out redaction allegations:

> [A] large fraction of the fees at issue were those fees and expenses associated with bringing the sanctions motions themselves.  The text of § 1927 authorizes the recovery of "the excess costs, expenses, and attorneys' fees reasonably incurred because of such [unreasonable and vexatious conduct]."  The Court is satisfied that in light of the statutory text, logic, and common sense, the costs associated with bringing the sanctions motion are borne "because of" the conduct that gives rise to the motion and are thus recoverable.

(*Id.* at 3.)

On September 13, 2024, Appellant timely appealed the Final Sanctions Order.  (D.I. 1.) The appeal is fully briefed.  (D.I. 16, 17, 20, 24.)  No party requested oral argument.

## III.   JURISDICTION AND APPLICABLE STANDARDS

Appeals from the Bankruptcy Court to this Court are governed by 28 U.S.C. § 158. District courts have mandatory jurisdiction to hear appeals "from final judgments, orders, and decrees."  28 U.S.C. § 158(a)(1).  The Final Sanctions Order, imposing monetary sanctions in a set dollar amount, is a final, appealable order.  *See In re Team Sys., Int'l,* 2024 WL 4444241, *5 (D. Del. Oct. 8, 2024).

This Court "review[s] the bankruptcy court's legal determinations *de novo,* its factual

10

findings for clear error and its exercise of discretion for abuse thereof." *See In re Trans World Airlines, Inc.*, 145 F.3d 124, 130 (3d Cir. 1998). Under the "fairly stringent" clearly erroneous standard, "an appellate court [] accept[s] the ultimate factual determination of the fact-finder unless that determination either is completely devoid of minimum evidentiary support displaying some hue of credibility or bears no rational relationship to the supportive evidentiary data." *Fellheimer, Eichen & Braverman, P.C. v. Charter Techs., Inc.*, 57 F.3d 1215, 1223 (3d Cir. 1995) (internal quotation marks omitted).

The Bankruptcy Court's determination as to "whether the facts warrant the imposition of monetary and disciplinary sanctions" is reviewed "for an abuse of discretion." *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 278 F.3d 175, 180 (3d Cir. 2002); *LaSalle Nat'l Bank v. First Conn. Holding Group, L.L.C. XXIII*, 287 F.3d 279, 288 (3d Cir. 2002) ("We review the district court's imposition of attorney sanctions under 28 U.S.C. § 1927 for an abuse of discretion."). A court abuses its discretion when it "bases its opinion on a clearly erroneous finding of fact, an erroneous legal conclusion, or an improper application of law to fact." *In re Prosser*, 777 F.3d 154, 161 (3d Cir. 2015) (internal quotation marks omitted). "Under the deferential abuse of discretion standard," a decision will be reversed "only where [it] is arbitrary, fanciful, or clearly unreasonable—in short, where no reasonable person would adopt the [] court's view." *In re VistaCare Grp., LLC*, 678 F.3d 218, 232 (3d Cir. 2012) (internal quotations omitted).

Section 1927 of title 28 provides that any "attorney or other person admitted to conduct cases in any court of the United States ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. The Third Circuit explained in *In re Prudential* that sanctions are warranted where the Court finds that "an attorney has (1) multiplied proceedings; (2) in an unreasonable and vexatious manner; (3)

11

thereby increasing the cost of the proceedings; and (4) doing so in bad faith or by intentional misconduct." *In re Prudential*, 278 F.3d at 188. "Bad faith is a factual determination reviewable under the clearly erroneous standard. Once a finding of bad faith is made, the appropriateness of sanctions is a matter entrusted to the discretion of the district court." *Id.* at 181 (quoting *Hackman v. Valley Fair*, 932 F.2d 239, 242 (3d Cir. 1991).

## IV.    ANALYSIS

### A.    The Bankruptcy Court Did Not Abuse its Discretion by Imposing Sanctions

The record provides ample support for the Bankruptcy Court's determination that Appellant unreasonably and vexatiously multiplied the proceedings. As an initial matter, the Rule 60(b)(3) motion was patently untimely, as it was filed on January 31, 2024, more than a year after the Preliminary Injunction was entered on January 27, 2023. *See* Fed. R. Bankr. P. 60(c)(1) (providing that a motion for relief under Rule 60(b)(3) must be made "no more than a year after the entry of the judgment or order ....").

In connection therewith, Appellant prepared, signed, and filed multiple documents with the Bankruptcy Court that advocated the merits of unverified and false allegations of forgery and fraud against counsel to the Judgment Creditors, including of having made the white-out alterations to the Debtor's bank statements.

Additionally, the record reflects that Appellant prepared and filed false "evidence" with the Bankruptcy Court in the form of a facially dubious declaration and numerous demonstrably false statements of fact that are directly contradicted by the docket and the evidentiary record.

The record further reflects that Appellant further ignored the safe harbor notice of sanctions and pressed on with his accusations.

12

The record further reflects that the Judgment Creditors have been required to expend substantial resources in the form of professional fees and expenses in defending against these claims and preserving the Preliminary Injunction.[7]

In light of the foregoing, the Bankruptcy Court, in a detailed Memorandum Opinion, found that Appellant's conduct was unreasonable, vexatious, and multiplied the proceedings. In its Final Order, the Bankruptcy Court held that all fees and expenses incurred in connection with the sanctions motions are recoverable. The Court agrees that the sanctions awarded were reasonable and directly attributable to Appellant's conduct, as they were calculated based on documented time and legal expenses. Accordingly, the Court agrees that the imposition of monetary sanctions based on this record was well within the Bankruptcy Court's discretion.

## B.      Appellants' Challenges Are Unavailing

Appellant raises four main arguments in this appeal: that the Bankruptcy Court (i) erred in finding bad faith which is required under section 1927 (*see* D.I. 16 at 13-18); (ii) erred in admitting fraudulent evidence which Appellant correctly challenged (*see id.* at 13-20); (iii) erred in using evidence from outside of the proceeding (*see id.* at 20-22); and (iv) erred in imposing punitive sanctions unrelated to any multiplication of proceedings and which were solely imposed to silence Appellant (*see id.* at 22-24). The Court addresses each argument in turn.

### 1.      The Bad Faith Finding Is Not Clearly Erroneous

Appellant challenges the Bankruptcy Court's finding of bad faith. (*See* D.I. 16 at 13-18.)

---

[7] As counsel to the Judgment Creditors also points out, Appellant's aspersions are on public docket for all to see in connection with counsel's name and reputation, which will have lasting consequences. Indeed, the ethics complaint (which Appellant advocated the merits of in numerous Bankruptcy Court filings), while dismissed, will remain a part of counsel's record, and will need to be explained when renewing malpractice insurance, when renewing board certifications, and when applying for jobs. These are expenses that were not and cannot be accounted for by the imposition of sanctions.

13

"Before a court can order the imposition of attorneys' fees under § 1927, it must find willful bad faith on the part of the offending attorney." *In re Prudential*, 278 F.3d at 188 (internal citation and quotations omitted). "Indications of this bad faith are findings that the claims advanced were meritless, that counsel knew or should have known this, and that the motive for filing the suit was for an improper purpose such as harassment." *Id.* (internal citation and quotations omitted). "Bad faith is a factual determination reviewable under the clearly erroneous standard." *Id.* at 181 (internal citation and quotations omitted).

The Bankruptcy Court's finding of bad faith is based upon numerous false statements in the 60(b)(3) Motion, including false assertions and inferences that Judgment Creditors' counsel made the whiteout redactions on certain bank statements that concealed transfers to Appellants' clients, which Appellant knew or should have known were false or lacked evidentiary support. As the Bankruptcy Court observed, "an allegation that either a party or an attorney fabricated evidence is an exceptionally serious one. . . . [T]he making of such a serious allegation against another lawyer, without strong evidence supporting the truth of that allegation, is precisely the sort of conduct that might require the imposition of sanctions in order to protect the integrity of the judicial process." (Sanctions Op. 9 (A0120).) Appellant was retained by his clients at least two (2) months prior to the 60(b)(3) Motion and therefore had plenty of time to conduct an inquiry into the validity of his allegations of forgery and fraud against counsel to the Judgment Creditors. Appellant does not point to any credible evidence to support his allegations in the 60(b)(3) Motion that the Judgment Creditors' attorneys altered key evidence.

Appellant argues on appeal that he did not act in bad faith because he relied upon his clients' testimony under oath that the documents they produced to the Trustee did not contain white-out redactions. (D.I. 16 at 15.) The Bankruptcy Court found that the witness testimony on which Appellant relied lacked credibility (*See* Sanctions Op. 10-11 & n. 29 (A0121-22).)

14

Defendant Steven Acosta testified (consistent with the Acosta Declaration) that the documents Appellant's client produced to the Trustee did not have any white-out redactions, except for certain handwritten notes that were on the original documents and that were whited out before the documents were produced. (Sanctions Op. at 10 (citing 4/29/24 Tr. at 150, 165, 175).) As the Bankruptcy Court explained, however, "on cross-examination, Acosta testified that he was still in possession of some of the original documents at issue. Those would appear to include the bank statements to which the white-out had been applied, and that the parties refer to as the 'painted' documents. Acosta acknowledged that these documents belonged to the debtor, and that he has them 'in storage.'" (*Id.* (quoting 4/29/24 Tr. at 181, 193.) "When pressed, he elaborated that '[w]ell, I mean in storage in a closet. You know, in a closet in my house.'" (*Id.* (quoting 4/29/24 Tr. at 182.) "Later, however, Acosta suggested that the "set with the paint on it" (referring to the whited-out handwritten notes) is 'with Ms. Mott.'" (*Id.* (citing 4/29/24 Tr. at 193.) But the Bankruptcy Court previously ordered Ms. Mott and Acosta to "turnover all assets, documents, and other property of the Debtor to the Trustee on or before July 13, 2022." (Bankr. D.I. 222 ¶ 2.) "In light of Acosta's testimony that he and/or Mott in fact retained copies of the debtor's original bank statements that they had long ago been ordered to turn over to the trustee, the Court does not credit Acosta's statements regarding those bank statements." (*Id.* at 10-11; *see also id.* at 11 n.29 (setting out further inconsistencies in documents presented by Acosta during the case).) Appellant does not explain how this credibility determination was an abuse of discretion or otherwise rendered the bad faith determination clearly erroneous.

Appellant further asserts that the "redactions did not conceal anything" and that other documents produced by his clients "clearly revealed all of those transactions." (D.I. 16 at 15.) As set forth in the Sanctions Opinion, however, the whiteout redactions concealed more than $3 million in transfers to Appellant's clients, which transfers were also not disclosed in the Debtor's

15

SOFA, which D. Mott signed under penalty of perjury, and they were not properly disclosed in other records produced by Appellant's clients. (*See* Sanctions Op. at 2 (A0113).)

Appellant further cites certain R+C emails and a purported "expert analysis" to show that records were altered by counsel to the Judgment Creditors. (*See* D.I. 16 at 15-16.) However, at the April 2024 Hearing, Appellant failed to present any direct evidence on these points and testified that he still wanted to look at the metadata, which he had not done before filing the 60(b)(3) Motion. Rather, Appellant attempted to introduce the expert analysis in a post-hearing brief, and the Bankruptcy Court properly excluded them. (*See* Sanctions Op. at 22-24; *see also, e.g., TruePosition Inc. v. Andrew Corp.,* 2008 WL 205305, at *2 (D. Del. Jan. 23, 2008) (granting motion to strike portions of post-trial brief that were not included as part of the record and stating that the court would not consider them in disposition of the post-trial motions); *Tristrata Tech., Inc. v. ICN Pharms., Inc.,* 314 F. Supp. 2d 356, 359 (D. Del. 2004) (striking declaration attached to post-trial brief that was not admitted at trial). In sum, Appellant has never alleged that he was aware of either the purported R+C email or his "expert" at the time he filed the 60(b)(3) Motion. They are, therefore, irrelevant to the question of Appellant's bad faith at the time he filed the 60(b)(3) Motion and do not demonstrate any clear error in the finding.

Appellant further argues that, "[o]n February 6, 2024, the Defendants withdrew the allegations as to the whiteout redactions [Adv. D.I. 172] due to the burden of proof required under Rule 60(b)(3), while indicating that in a future motion the issue would be raised under a less strenuous burden of proof." (D.I. 16 at 14 n.13 (citing the Notice of Partial Withdrawal and 4/29/24 Tr. at 259 (Appellant's testimony that, in light of the burden of proof, the whiteout issue was withdrawn).) Accordingly "[t]he white-out allegations that the Bankruptcy Court relied upon were actually not in the [Rule 60(b)(3) Motion] that was before the court." (*Id.* at 14.)

The Notice of Partial Withdrawal was not filed until February 29, 2024 (Adv. D.I. 172),

16

thirteen days *after* the Trustee filed his lengthy Objection and Cross-Motion (on February 16, 2024) (A0069) (Adv. D.I. 153) and numerous exhibits in support. The 60(b)(3) Motion contained numerous allegations and inferences that opposing counsel had made the white-out redactions. Those allegations were not withdrawn until after the Trustee incurred the expenses to file an objection to the 60(b)(3) Motion. Even then, the Appellant and Defendants continued to stand by the allegations against counsel to the Judgment Creditors. (Adv. D.I. 172 at 3 ("While Defendants continue to stand by the veracity and accuracy of all statements made in the Motion, and all information submitted with the Motion," they will "withdraw, without prejudice, those portions of the Motion that seek to vacate the Court's finding that the [Judgment Creditors] were responsible for the white-outs identified in the Decision.") (Adv. D.I. 172 at 3.) The professional fees and expenses would not have been incurred by the Trustee and Judgment Creditors if Appellant had not filed and prosecuted the 60(b)(3) Motion, and it is unclear how the Notice of Partial Withdrawal was sufficient to render any of the fees awarded outside of the scope of § 1927.

In sum, the Bankruptcy Court's bad faith finding was based upon a substantial and largely unrebutted record. Among other things, the Bankruptcy Court found that Appellant had falsely accused counsel to the Judgment Creditors of altering key evidence, and that Appellant had failed to present any credible evidence in support of the accusation. Appellant's other arguments regarding bad faith are either flatly contradicted by the record or rely on purported evidence that Appellant failed to present at the evidentiary hearing on sanctions. In sum, Appellant has failed to show any clear error with respect to the finding of bad faith.

### 2.    Appellant's Evidentiary Arguments Lack Merit

Appellant asserts that he was right to challenge certain evidence that was presented in support of the Preliminary Injunction. (*See* D.I. 16 at 13-20). "The facts are clear that the four pages of documents with whiteouts were not properly authenticated as coming from TSI

17

members." (*Id.* at 18.) "The party introducing them has the burden of proving their source and failed to do so." (*Id.*) "One could argue that attributing them to TSI members is itself a bad faith allegation." (*Id.*)

The record reflects that, in January 2023, the Bankruptcy Court conducted a full-day evidentiary hearing on the Trustee's request for a preliminary injunction, at which hearing Appellant's clients were represented by multiple law firms. At the January 2023 Hearing, the Trustee introduced more than 30 exhibits either by agreement of the parties or without objection from Mr. Mott's clients' attorneys. (*See* 1/23/23 Tr. at 3-4, 32:24-33:21; 40:5-21; 42:19-25; 54:18; 75:25-76:8; 86:8-10; 87:7-21.) The time for Appellant's clients to object to the admissibility of exhibits was the January 2023 hearing on the preliminary injunction, and they raised no objections at that time. *See* Fed. R. Evid. 103. Appellant has failed to articulate any basis under which he could challenge the admissibility of exhibits at the January 2023 Hearing that his clients' counsel either stipulated to or did not object to the admission of such exhibits at the time—any such evidentiary objections were waived. *See, e.g., In re Managed Storage Int'l, Inc.*, 2020 WL 1532390, at *7 (D. Del. Mar. 31, 2020) ("After allowing the Avnet Ordinary Course Analysis to be admitted, Appellant did not raise any challenge or objection to the length of that analysis. This was a waiver.") (citing *Waldorf v. Shuta,* 142 F.3d 601, 629 (3d Cir. 1998) ("[A] party who fails to object to errors at trial waives the right to complain about them following trial.") and *Fleck v. KDI Sylvan Pools, Inc.*, 981 F.2d 107, 116 (3d Cir. 1992)).

The Court agrees that Appellant's argument fails because his clients, the Defendants, were represented by counsel at the January 2023 Hearing, and the challenged documents were introduced without objection. By challenging these documents anyway, and without supporting evidence, Defendant multiplied the proceedings.

18

### 3. The Bankruptcy Court Properly Considered Appellant's Ethics Complaint to the Delaware Bar As Evidence of "Vexatious Intent"

Appellant argues the Bankruptcy Court erred in concluding that Appellant had acted with vexatious intent because it relied on evidence from outside of the bankruptcy case—the ethics complaint filed by Appellant against counsel to the Judgment Creditors. (*See* D.I. 16 at 20-22.) Appellant argues that "Section 1927 is limited to the proceedings themselves and not activities outside of the Court." (D.I. 16 at 20.) "[T]he statute does not reach conduct that cannot be construed as part of the proceedings before the court issuing the sanctions. (*Id.*) "The statute is strictly construed," Appellant argues, "to ensure that the legitimate zeal of an attorney representing a client is not dampened" and to "ensur[e] that sanctions are only applied to conduct directly related to the proceedings before the court that is considering the sanctions." (*Id.* at 20-21.) Appellant asserts that the "*only predicate* for [the Bankruptcy Court's Sanctions] opinion is created by going outside of the proceedings, which the law precludes [the Bankruptcy Court] from doing." (*Id.* at 21) (emphasis added).[8]

The record reflects that, during the April 2024 Hearing, Appellant and his then co-counsel attempted to distance themselves from the allegations in the 60(b)(3) Motion against counsel for the Judgment Creditors, asserting that there was merely an "inference" that counsel to the

---

[8] In further support of his argument, Appellant cites the following conclusion from the Sanctions Opinion: "the Court ultimately concludes that the mere act of signing the memorandum is not itself sufficient evidence of the signers' subjective bad faith to conclude that the attorneys' conduct was "vexatious." (Sanctions Op. at 20). According to Appellant, this shows that "the pleadings in the case itself were insufficient basis for imposing sanctions. That should have been the end of the [Bankruptcy Court's] inquiry." (D.I. 16 at 21.) This portion of the Bankruptcy Court's careful opinion is taken out of context. The Bankruptcy Court made this comment in determining whether to impose sanctions on Appellant's co-counsel, Munoz and Rosner, where the "record contains little evidence of their intent beyond their having filed the motion." (*Id.*) Evidence adduced at the April 2024 Hearing established that Appellant, on the other hand, was the "lawyer who had principal responsibility" for the 60(b)(3) Motion and was "the principal intellectual architect and draftsperson" of the 60(b)(3) Motion. (*See* Sanctions Op. at 12.)

19

Judgment Creditors had made the whiteout redactions, not a direct allegation. (Sanctions Op. 19 (A0130).) The Bankruptcy Court found that Defendants' counsel was responsible for the "false and irresponsible allegation against opposing counsel." (Sanctions Op. 19-20 (A0130-31).) Further, with respect to Appellant, the Bankruptcy Court found that "[his] ethics complaint states unambiguously that 'creditors' counsel … did the white redactions.' It adds that 'Kasen [either] made [the] white redactions or knew who did and did not disclose this to the court.'" (Sanctions Op. 21 (A0132) (quoting bar complaint).) The Bankruptcy Court continued, "[Appellant's] entire state bar complaint is premised on the allegation that [counsel to Judgment Creditors] was involved in the use of fabricated evidence that would justify disciplinary proceedings." (*Id.* (A0132).) The Bankruptcy Court concluded that "the ethics complaint resolves any ambiguity about whether Mott acted with vexatious intent." (*Id.*)

The Court disagrees with Appellant's characterization of the Bankruptcy Court's decision. The 60(b)(3) Motion contains numerous statements that any reasonable reader would conclude directly accuses the Judgment Creditors' counsel as having been responsible for the whiteout redactions. These statements alone, which lack evidentiary support, provide a sound basis for the Bankruptcy Court to have imposed sanctions. The Bankruptcy Court did not sanction Appellant for filing the bar complaint. Rather, the Bankruptcy Court considered Appellant's statements in the bar complaint as further evidence of vexatious intent "to the extent the actions taken in this proceeding leave the Court uncertain about whether a lawyer acted in bad faith." (Sanctions Op. 20.)

### 4. The Bankruptcy Court Imposed Appropriate Sanctions

Finally, Appellant challenges the amount of sanctions. (*See* D.I. 16 at 22-24.) Appellant describes the amount imposed—totaling over $246,000—as "punitive," "intended to silence counsel," and erroneous because the total includes "attorney fees for the response to the entire

Rule 60(b)(3)" Motion, despite the fact that "one issue," presumably the alleged white out redactions, "included in the initial filing" was later "removed." (*See* D.I. 16 at 22-23.) According to Appellant, the award was an abuse of discretion as "no reasonable person could take the view adopted by the trial court." (*Id.* at 23.)

Once a finding of bad faith is made, the appropriateness of sanctions is a matter entrusted to the discretion of the [trial] court." *In re Prudential*, 278 F.3d at 181. The Court sees nothing in the record to support Appellant's assertion that sanctions were intended to silence him or that he did not receive due process. Appellant was served with a detailed statement of fees and expenses and was given every opportunity to challenge them. Instead of raising a specific objection, Appellant used his objection to repeat his claim that the white-out redactions argument did not appear in the 60(b)(3) Motion, when they clearly did, and his theory that his belated withdrawal of those allegations "without prejudice" somehow justifies denying Appellees the professional fees already incurred in preparing their responses to those allegations. Appellant has failed to demonstrate any abuse of discretion with respect to the professional fees incurred by the Trustee and the Judgment Creditors in connection with the 60(b)(3) Motion.

## V.     CONCLUSION

The Court finds no clear error in the Bankruptcy Court's determination that Appellant's conduct was unreasonable, vexatious, and multiplied the proceedings, or abuse of discretion in its determination that all fees and expenses incurred in connection with the sanctions motions are recoverable. For the reasons set forth herein, the Court will affirm the Final Sanctions Order. The Court will issue a separate Order consistent with this Memorandum.

_____
GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE

21